On the Merits.
(Jan. 18, 1904.)
BREAUX, J.
Simulation vel non in matter of an act of transfer of land is the question at issue.
Plaintiff obtained a judgment (on an alleged tort) for $5,000 against defendant Louis Delatour on the 3d day of May, 1901.
The cause was tried before a jury, and the judgment was based on its verdict. The date of this verdict has bearing upon the issues, as will hereafter appear, and for that reason .it is mentioned here that this verdict bears date April 16, 1901. It was inscribed in the office of the recorder of mortgages on the 19 th day of the last-mentioned month.
This action was brought by plaintiff after he had obtained judgment, as just mentioned, in order to have decreed as null a sale which defendant made of property to Louis C. Jacobs on the 20th of April, 1901.
In view of the issues raised regarding the character of the action, we will insert here a statement of the pleadings.
The allegations of plaintiff, in substance, *769 are that Louis Delatour and his wife planned and conspired with Louis 0. Jacobs to shield the title to his property by executing a “simulated and fraudulent sale,” with intent to place it beyond the reach of his creditors, particularly plaintiff; that he was insolvent —a fact known, plaintiff avers, to the vendee, Jacobs; that no consideration passed between vendor and vendee; that the asserted payment is a simulation; that vendor never delivered the property to the vendee, but that he remained in possession.
• Plaintiff concludes his petition by asking the court to render judgment against Louis Delatour, Hortense Marie Delatour, and Louis G. Jacobs, defendants, “annulling and revoking said pretended and fraudulent sale, and subjecting” the property to plaintiff’s claim.
An exception of no cause of action was fil- • ed, which was referred to the merits with consent of parties.
The answer of Mr. and Mrs. Delatour is a general denial, and these defendants aver that the sale was made in good faith, and is valid.
Louis G. Jacobs, in his answer, averred that the property was offered to him; that he thought it was well worth the amount asked; he bought it; and that afterward, by reason of his friendship for Mrs. Delatour and her husband, he sold it to her.
Mrs. Delatour in the answer further avers that at the time of her marriage she had $3,500, and since her marriage she inherited from her father and from her aunt, Mrs. Marie Pieheloup, a further sum of $4,000, all of which was received by him and expended •for his account;. “that with the proceeds of that sale Louis Delatour discharged the indebtedness, or part thereof, due by him to his wife, as appears by the recital of the act of April 20, 1901, and by certificate of marriage attached thereto.”
Having sufficiently stated the pleadings, we stop for a moment, before taking up the merits for decision, and take into consideration the exception of no cause of action referred to the merits as before mentioned, which may none the less be disposed of at this time, as it presents a distinct issue.
Evidently plaintiff intended to make the averred simulation his ground of action; but he has gone beyond, and included elements of the revocatory action. The action partakes of the characteristics of both the action en declaration de simulation and the revocatory action. Defendant did not call upon the plaintiff to elect between the two.
If the action be en declaration de simulation, and it be also the revocatory action, it may be treated either as revocatory, or en declaration de simulation. Mackesy v. Shultz et al., 38 La. Ann. 385.
But we think the action is en declaration de simulation. The petition contains unnecessary averments, it is true. They do not, however, have the effect of changing it completely from the action en declaration to the revocatory. The unnecessary averments are not fatal to the action en declaration de simulation.
We take up the merits of the cause.
The sale attacked encounters fatal objections to its validity. The date of the debt gives rise to one of the questions for our decision. Defendants’ contention is that the date of the judgment is the date of the debt. Let us see.
The debt had accrued at least after the verdict of the jury. It had not been finally liquidated, it is true, but it had been found by the jury that, the defendant Delatour in the first suit was indebted to the plaintiff in the sum before mentioned. The judgment which followed the verdict did not add anything to the jury’s return and verdict further than to make it executory.
“A judgment is not a debt within the meaning of that article. ‘A judgment neither creates, adds to, nor detracts from a debt. It only declares its existence, fixes its amount, and secures to the creditor the means of enforcing its payment.’ ” Succession of Anderson, 33 La. Ann. 582.
Why date the obligation from the date of the judgment, since it adds nothing to the debt?
One of the reasons urged by appellants is that in case of tort the amount allowed by the judgment bears interest from 'its date, and not from the verdict; and that it follows that, being due from the date of the judgment, it is the date of the debt; that no action can be brought to annul a contract made before the .time the debt accrues.
*771 Having laid down this proposition, defendant is pleased to contend that, as the date of the debt, as he says, was after the date of the sale, therefore plaintiff had no right of action.
We cannot agree with the proposition that the debt is due only from the date of the judgment; nor do we agree with the proposition (advanced in order to sustain the view that the debt bears interest from the date of the judgment) that the judgment, in case of tort must bear interest from it (the date of the judgment).
The debt relates back to the tort committed.
“Every act whatever of man that causes damage to another obliges him to repair it.” Civ. Code, art. 2315.
And, at any rate, interest runs from the verdict, and not from the judgment. The theory that, because interest runs from the date of the judgment, it is evident that the debt is that of the judgment, must fall. We repeat the jury may allow interest in its verdict finding an amount due for a tort. Code Prac. art. 522.
Interest should run from the date of the verdict.
Returning to the date of the obligation without reference to the verdict or the judgment, “every act done by a debtor with intent of depriving his creditor of the eventual right he has on the property of his debtor is illegal.” Civ. Code, art. 1969.
It is from the date the injurious act was committed that the obligation runs under our law. It has been restricted by statute so that it runs from the verdict. See Code Prac. art. 522.
Taking up .for decision other grounds which come up on the merits, the record informs us that the act of sale attacked was made for $G,000, the asserted price. The buyer of the property, Louis C. Jacobs, from Louis Delatour, was not an innocent third person. He had attended court as a witness at the trial of the suit for damages, and testified as a witness, and for a number of reasons we infer that he knew of the troubles which Louis Delatour, one of the defendants had.
He, while present at court as a witness, bought the stenographer’s account who reported the evidence. He does not seem to have felt any apprehension about his claim, although his friend Delatour was sued for a large amount. We are not informed whether Delatour (the alleged insolvent) ever paid Jacobs’ stenographer’s bill, which he (Jacobs) had bought as first mentioned, or whether it was taken into account in paying the $6,000 for defendant’s property, if $6,000 were ever paid.
We see that in the deed of sale attacked it is stated: “And as regards the judgment of $10,000 above described in favor of Frank Qoothye, the said Louis Delatour declared that same was rendered about three days ago, and is still unsigned by the judge before whose division same was rendered; that a motion for a new trial has been made by him; and that said judgment has no force or effect whatever with which declaration the said Louis C. Jacobs declared himself to be satisfied, and hereby exonerates the notary from all liability or responsibility in the premises”—which goes further to show that Jacobs knew all about plaintiff’s claim before he (Jacobs) bought the property.
The buyer, Jacobs, has not explained how it was that he, from a financial point of view, found himself able to buy and pay an amount somewhat large, as compared with property which he owned. It may not, we grant, have devolved upon him to prove all particulars regarding the price he paid, particularly as he was not questioned with that particular end in view. He still should have rendered it reasonably certain that he had the amount which he avers he paid for the property.
To some extent, at least, the burden of proof was with him.
It had been shown that his business was not very extensive, nor his property of such a value that he at all times, and on a moment’s notice, controlled as much as the amount of the purchase price, viz., $6,000.
There is no evidence before us that the price was paid, save the declaration in the deed itself. This clause of asserted payment of the price embodied in this deed was not enough to prove payment in view of the testimony going to show that no payment could have been made as declared in the deed.
*773 ‘Where a sale is attacked as simulated, and a prima facie case of simulation is made out, and the purchaser fails to offer rebuttiug testimony to show that he actually paid anything for the property, the sale will be decreed to be simulated.” Gourdian & Kerr v. C. B. Baylies et al., 10 La. Ann. 691; Birdsale v. Lakey, 6 La. Ann. 647.
The buyer, Jacobs, as a witness, is unfortunate in his narrative of certain facts. He is contradicted by witnesses.
He gave one reason at one time for wishing to become the owner of the property in question, and another reason at another time.
He thought, he said, at one time, there was money in the purchase, and at another time he desired to buy the building, and concluded that to effect its purchase it was necessary to buy the store as well. We are not informed that an inventory of the stock was taken, or such inspection made as buyers usually make. The whole seems to have been bought in the lump, and the buyer burdened himself with a grocery, although that was not his business, and he made no preparation with the view of a proper management of the business by employing a clerk or some one to represent him.
It was only two days after the sale that he employed a clerk (George Elliot) to attend to the business. In the course of- a short time he and the clerk disagreed, and about the end of the clerk’s employment they were no longer on friendly terms, although they spoke to each other.
This clerk testified in a manner going to show, if he stated truly, that the asserted vendor, Mr. Delatour, remained in possession, sought to keep up the business, and received the cash. According to the testimony of this witness, he never delivered the property at all to Jacobs, the asserted buyer.
Our learned Brother of the district court, who saw and heard this witness Elliot, did not disbelieve him.
In his opinion, prepared with painstaking care, he states: “These additional facts are found in the testimony of Elliot, whom I believe to have spoken truthfully, notwithstanding his declared hostility to Jacobs for having discharged him. His testimony is, in some respects, corroborated.”
“It is hardly possible to make out more completely a case of simulation, having for its object the fraudulent concealment of the vendor’s property from the pursuit of his creditors.”
If Elliot is to be believed, the conclusion just expressed is inevitable.
We do not think that the enmity against Jacobs of this witness dwelt upon by defendant is cause sufficient to discredit him under the circumstances.
In the course of a short time Jacobs sold the property back to Mrs. Delatour. Jacobs, in his answer, alleges “that he bought it (the property), and that subsequently, on the solicitation of Mrs. Delatour, and by reason of his friendship for them, and by reason of his change of plan, he resold the property to her upon her representation that she desired to enter into business for herself, and, knowing that business and clientelle, she desired to take and re-establish the business which had been begun by her husband.”
As relates to friendship, or any benevolent act, urged by defendants, owners who prove the reality of their deed are unquestionably at liberty to sell back to the vendor or vendor’s wife.
But here the vendor, to the knowledge of Jacobs, was insolvent, and, unless his wife had an amount with which to buy, the transfer to her only adds to the unreality of all the asserted transactions from beginning to end.
After the first suit had been filed against her husband, Delatour—that is, the suit in which plaintiff recovered a judgment for $5,000—she, in a notarial declaration, which was recorded, stated that her husband at the time of her marriage had received of her paraphernal funds the sum of $3,500, “and that her said husband took charge of said amount, which is still in his hands to-day; and that since her marriage she has received at different times and in various amounts by inheritance from her father, Louis Picheloup, and from her aunt, Mrs. Marianne Picheloup, widow Mistrot, the total sum of four thousand dollars, of which sum her husband has also taken charge, and which is still in his hands to-day,” to copy from the notarial declaration.
In the deed of sale of Louis Delatour she *775 renounced her mortgage, and declared that she had been paid by him. This declaration would be effective and reasonable if it were evident that she had received these amounts, and that they were turned over to her husband, as before mentioned.
The testimony does not sustain this paraphernal claim of Mrs. Delatour with scrupulous accuracy. She, as a witness in her own behalf at one time testified that she received the amount of $3,500 from the succession of her father, and that she received it at the date -of her marriage. Afterward, without the least explanation for the change in her testimony, she testified that it was a donation by her mother to her after her marriage. And again, while testifying, she stated that the amount was given to her by her mother in 1885. This must have been three years prior to her marriage, as we infer from the testimony that she was married in 1888.
Her mother had other children, seven in number. She was the owner of a dairy, and nothing of record proves that she was in a situation to be as bountiful to one of her children as a donation of the amount in question would show.
With reference to amounts realized in France from the succession of a relative, the testimony is equally as weak. The witnesses do not agree regarding the amounts, and do not make it appear with any certainty that any amount was ever received.
We have this further to-say about the sale of Delatour to Jacobs: It would he most singular that Mrs. Delatour adopted such a roundabout way to obtain the property if she had any paraphernal claim. Her husband had the right to sell to her in satisfaction of her paraphernal claims.
“The property of the debtor is the common pledge of his creditors.” Article 3183, Oiv. Code.
Debtors are without right to dispose of their property in a manner that would destroy this “common pledge.” The evidence made out at least a prima facie case of simulation, and the evidence of the defendant did not rebut the case thus made.
We concur with the district judge in the opinion that the sale in question is not legal and binding.
For the reasons assigned, the judgment appealed from is affirmed.